NTD I, LLC, NORTH TOWER　　　　　)
DEVELOPMENT, LLC, and PAUL　　　)
WEISMANN,　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　　　　No. 4:16CV1246 ERW
　　　　　　　　　　　　　　　　　　)
ALLIANT ASSET MANAGEMENT　　　)
COMPANY, LLC, ALLIANT CAPITAL,　)
LTD., ALLIANT CREDIT FACILITY ALP, )
LLC, and ALLIANT TAX CREDIT FUND　)
36, LTD, and ALLIANT TAX CREDIT 36,　)
LLC.,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss and Motion to Strike Jury Demand [ECF No. 17].

## I.　　BACKGROUND

This litigation arises out of a dispute between Plaintiffs NTD I, LLC, North Tower Development, LLC, and Paul Weismann and Defendants Alliant Asset Management Company, LLC ("Asset Management"), Alliant Capital, Ltd. ("Capital"), Alliant Credit Facility, Ltd. ("Credit Facility"), Alliant Credit Facility ALP, LLC ("Credit Facility ALP"), Alliant Tax Credit Fund 36, Ltd. ("Fund 36 Ltd."), and Alliant Tax Credit 36, LLC ("Fund 36 LLC," and together with Fund 36 Ltd., the "Limited Partners").

In 2006, Water Tower Place Limited Partnership (the "Partnership") was formed, pursuant to an Amended and Restated Agreement of Limited Partnership (the "LPA"), for the

1

general purpose of constructing, rehabilitating, and operating affordable housing apartment units to qualify for federal and state low-income housing tax credits. Water Tower Place is located in Saint Louis, Missouri, and comprised of 178 residential housing units in 34 buildings. The project was financed by a 2006 issuance of Multifamily Housing Revenue Bonds that provide the low-income housing tax credits and Water Tower Place must meet regulatory provisions through 2020 to remain housing tax credit qualified.  Housing tax credits are contingent on Water Tower Place maintaining occupant eligibility, and/or unit gross rent compliance.

## A.   The Parties

Plaintiff NTD I, LLC, is the General Partner of the project Partnership.  Defendant Fund 36 LLC is the Partnership's Administrative Limited Partner. Fund 36 LTD is the Partnership's State Limited Partner and Investor Limited Partner. Plaintiff North Tower Development, LLC (the "Developer"), managed the construction and rehabilitation of Water Tower Place, pursuant to a Development Services Agreement. Plaintiff Paul Weismann is the sole member and manager of both the General Partner and the Developer.  Plaintiffs Weismann and the Developer guaranteed performance of the General Partner under the LPA, pursuant to a Guaranty Agreement.  Alliant Asset Management, Alliant Capital, Alliant Credit Facility, Alliant Credit Facility ALP, along with the Limited Partners are affiliates that operate together under the corporate umbrella of the Alliant Company (collectively, "Alliant").

## B.   Duties and Obligations of the Parties

Under the LPA, the General Partner is responsible for overall management and control of the Partnership business. The General Partner is entitled to one one-hundredth of a percent (0.01%) of the Federal housing tax credits. The General Partner is obligated to make operating loans to the Partnership as needed to fund operating deficits. The General Partner's obligation to

fund operating deficits expires and is discharged on the "Sunset Date." According to the LPA, the Sunset Date occurs thirty-six months after the date on which Water Tower Place attains a benchmark entitled "Rental Achievement."[1] Weismann is responsible for the management and control of the General Partner and the Developer. Weismann's obligation to fund Operating Deficits, as surety of the General Partner or otherwise, expires and is discharged on the "Sunset Date."

Also pursuant to the LPA, the Administrative Limited Partner's duties include receiving and approving certain Partnership reporting, giving its consents and/or approvals on various Partnership decisions, and exercising discretion as to certain LPA matters. The Administrative Limited Partner is entitled to one one-hundredth of a percent (0.01%) of the housing tax credits. The State Limited Partner's role is to receive one hundred percent (100%) of the state housing tax credits. The Investor Limited Partners role is to receive ninety-nine and ninety-seven one hundredths percent (99.97%) of the federal housing tax credits, as well as ninety-nine and ninety-six one hundredths percent (99.96%) of all losses.

In return, the State Limited Partner and the Investor Limited Partner are obligated under the LPA to make capital contributions to the Partnership upon the satisfaction of defined conditions. One such benchmark is the "Rental Achievement Test." Under the LPA, the Rental Achievement Test is: "the satisfaction of a level of Occupancy sustained for a period of three (3) consecutive months with actual rent levels and operating expenses which produce a Debt Service Coverage Ratio of 1.15 to 1.00 with respect to all projected permanent financing for each of such

---

[1] The LPA defines "Rental Achievement" as: "the date that all of the following conditions have been fulfilled: (i) Conversion; (ii) all governmental approvals necessary for Occupancy of all units in the Apartment Complex have been obtained; and (iii) one hundred percent (100%) Occupancy of the Tax Credit Apartment Units and ninety percent (90%) Occupancy of the Apartment Complex has occurred during each of three (3) consecutive months (but no earlier than the three (3) consecutive months immediately preceding Conversion), and which produces a Debt Service Coverage Ratio of 1.15 to 1.00 for each of such three (3) consecutive months."

three (3) consecutive months." As noted above, 36 months after the date on which Water Tower Place attains Rental Achievement, certain obligations of the General Partner and Weismann (as surety of the General Partner) are discharged.

Section 4.2 of the LPA states the General Partner was to attain Rental Achievement by December 1, 2008. The General Partner was five years late in meeting this deadline. Under the LPA, failure to attain Rental Achievement by December 1, 2008, provides a basis for rescission of the agreement. Neither the Limited Partners nor Alliant have yet attempted to rescind the contract. The Limited Partners have not paid $1,015,765.00 in capital contributions set forth under the LPA.

### C. Procedural Background

On August 1, 2016, Plaintiffs filed their complaint. The claims asserted by Plaintiffs are: Count I, for declaratory judgment reducing the Limited Partners' interests to zero; Count II, for declaratory judgment excusing Weismann from surety obligations; Count III, for breach of contract to recover the Limited Partners' Capital Contributions; Count IV, excusing Weismann from surety obligations due to the Limited Partners' contract breach; Count V, for damages for the Limited Partners' breach of the implied covenant of good faith and fair dealing; Count VI, for damages for Defendants' tortious interference with, and their inducement of a contract breach; Count VII, for equitable contribution and restitution to Weismann; and Count VIII, for punitive damages. Defendants moved for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing those claims, and striking Plaintiffs' jury demand. [ECF No. 17 and 18]. Both parties requested oral argument related to Defendants' Motion to Dismiss. A hearing was held on December 14, 2016.

### D. Well-Pleaded Facts

The Court accepts as true the following well-pleaded facts alleged in Plaintiffs' complaint. By December 31, 2015 the General Partner had made operating loans totaling $2,439,283.00 to keep Water Tower Place in compliance and generate housing tax credits. Pursuant to the Guaranty, Weismann funded these operating deficits through the General Partner, in performance of his surety obligation. Weismann's obligation to fund operating deficits as surety of the General Partner is limited to $500,000.00. The Limited Partners, and by extension, Alliant, have received more than twelve million in benefits from Water Tower Place--over $8 million in housing tax credits, and over $4.4 million of losses.

Upon the satisfaction of certain conditions and the Rental Achievement Test, the Limited Partners were obligated to pay capital contributions to the Partnership. Even though Rental Achievement was delayed for five years, the General Partner cured its failure and Rental Achievement was attained on December 31, 2013. The Limited Partners never declared any breach of the LPA for delayed Rental Achievement. Although all conditions were satisfied on December 31, 2013, to trigger the Limited Partners' capital contributions, and the Partnership gave notice to the Limited Partners and Alliant, the Limited Partners did not make the required contribution. The Limited Partners' decision was in actuality made by Alliant management. As an excuse for the Limited Partners' failure to contribute, Alliant disputed that Water Tower Place had attained Rental Achievement. Alliant's challenge was unsupported and designed to delay or avoid payment of the capital contributions.

Because the Limited Partners funded only $5 million of their $6.2 million in capital contributions, they now owe at least $1,015,765.00 in capital contributions. Since October 1, 2007, the Developer has been entitled to a $1,250,000 development fee, pursuant to the Development Services Agreement.

## II.     STANDARD

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."   The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief."   To meet this standard and to survive a FRCP 12(b)(6)  motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).   This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).   Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation.   *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 556 U.S. at 679.   The Court must grant all reasonable inferences in favor of the nonmoving party.   *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

"While a complaint attacked by a [FRCP] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. 678). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted), provided that the complaint contains sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## III. DISCUSSION

Defendants contend Plaintiffs have failed to state a claim upon which relief can be granted and the case should be dismissed. Defendants set forth several arguments in support of their Motion; they will be addressed individually below.

### A. Claims III and V are precluded because the General Partner was the first to breach the LPA.

In their complaint, Plaintiffs allege Defendants failed to make over $1,000,000 in capital contributions to the Partnership in breach of the LPA. Plaintiffs seek to recover the Limited Partners' capital contributions in Count III. Plaintiffs also seek damages for the Limited Partners' breach of the implied covenant of good faith and fair dealing in Count V.

Defendants argue Plaintiffs' Counts III and V are precluded because the General Partner was the first to commit a material breach of the LPA. Defendants allege the face of the complaint concedes the General Partner failed to meet certain benchmarks in the development of the

property as required under the LPA. Specifically, Defendants point out that, under Section 4.2 of the LPA, the General Partner was obligated to meet the "Rental Achievement" benchmark by December 1, 2008, but the complaint acknowledges it was not attained until December 31, 2013—more than five years later. Thus, Defendants assert the General Partner breached a material term of the contract before the alleged breach by Defendants occurred. Defendants conclude Plaintiffs' Counts III and V must be dismissed pursuant to the "first to breach" rule.

Missouri adheres to the "first to breach" rule, which holds that a party to a contract cannot claim its benefit where he is the first to violate it. *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 18 (Mo. Ct. App. 2003). The "determination of the first to breach does not end the analysis, however, as only a *material* breach may excuse the other party's performance." *Id.* (emphasis added). "Whether a breach is material or not is a question of fact." *Id.* However, even a material breach can be waived by a party's acceptance of defective performance. *Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005). A party in breach may also cure the breach by correcting the deficiency in his performance. *Barnett v. Davis*, 335 S.W.3d 110, 113 (Mo. Ct. App. 2011).

Here, Plaintiffs argue the "first to breach" rule does not bar their claims because delayed Rental Achievement was not a *material* breach. Plaintiffs maintain the delay was not material as the Limited Partners were not deprived of the LPA benefits they reasonably expected.

Before considering the applicability of the "first to breach" rule, the Court notes the allegations in Plaintiffs' complaint are sufficient to state a plausible claim for relief. Plaintiffs support their claim for breach by setting forth facts establishing the Limited Partners received the benefits they reasonably expected--over eight million in tax credits and four million in losses under the LPA. Defendants acknowledged at the hearing the "tax credits all came as they were

supposed to come." Plaintiffs further state, despite receiving expected benefits, the Limited Partners failed to make over one million in required capital contributions. Plaintiffs also allege the actions of the Limited Partners, denying Plaintiffs their LPA benefits, were arbitrary, capricious, and pre-textual. Plaintiffs have pleaded sufficient facts to state a claim for relief.

With regard to the "first to breach" rule, the Court does not find it bars the assertion of Plaintiffs' claims. Plaintiffs did concede in the complaint and at the hearing, Rental Achievement occurred five years too late. However, although it is undisputed a term of the contract was not timely met, it is not equally evident from the pleadings the breach was *material* enough to invoke the "first to breach" rule. Defendants try to persuade the Court the materiality of the Rental Achievement deadline was established by the remedies provided in the LPA for failure to meet that deadline. Defendants point out the LPA indicates the parties agreed the failure to meet Rental Achievement "by December 1, 2008," permits the Limited Partners to rescind the contract. LPA §§ 7.4(A)(viii), 7.4(B).

The Court does not find Defendants' argument persuasive. Although Defendants may have had the contractual right to rescind, due to a delay in Rental Achievement, this option under the terms of the contract alone does not establish a material breach barring Plaintiffs from seeking to enforce the contract. Significantly, the complaint also avers the Limited Partners never declared any breach of the LPA for the delay in performance or attempted to rescind the contract.[2] Further, Plaintiffs stated at the hearing the Limited Partners continued to receive housing tax credits and the General Partner eventually attained Rental Achievement on December 31, 2013. Thus, the Limited Partners may have waived the delay and Plaintiffs may have, likewise, cured any breach. Accordingly, granting all reasonable inferences in favor of

---

[2] Defendants conceded at the hearing on the Motion to Dismiss they have not yet rescinded the contract, and were "attempting to ride this out."

Plaintiffs, the Court finds the application of the "first to breach" rule to dismiss Plaintiffs' Counts III and V inappropriate under these circumstances.

**B. Plaintiffs Weismann and North Tower Development should be dismissed from the action because they are not third-party beneficiaries of the LPA.**

Defendants argue claims asserted by Weismann and the Developer, based upon their status as third-party beneficiaries to the LPA, should be dismissed.[3] Defendants contend dismissal is appropriate as it is undisputed Weismann and the Developer are not parties to the LPA, and the LPA explicitly precludes the possibility of third-party beneficiary rights.

Defendants rely on Section 16.9 of the LPA, entitled "Parties in Interest," which provides that "[n]othing herein shall be construed to be for the benefit of or enforceable by any third party including, but not limited to, any creditor of the Partnership." Plaintiffs counter that the LPA's use of the word, "herein," renders the clause ambiguous. Specifically, Plaintiffs maintain it is unclear whether "herein" applies to the entire agreement or just Section 16. However, as noted by Defendants, the LPA itself defines "herein" as follows: "[w]ords such as 'herein,' 'hereinafter,' 'hereof,' 'hereto' and 'hereunder,' when used with reference to this Agreement, refer to this Agreement as a whole, unless the context otherwise requires." Based upon this definition, and the context in which it is used in Section 16, it is apparent Section 16.9 applies to the entire LPA. The Court does not find the ambiguity suggested by Plaintiffs.

Plaintiffs alternately argue, even if the LPA attempts to bar third-party beneficiaries, Weismann and the Developer can assert rights as parties to contracts encompassed by the overall transaction. Plaintiffs contend under Missouri law, the LPA, the Guaranty Agreement and the

---

[3] Weismann and the Developer have joined the General Partner in claims for breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count V), tortious interference (Count VI), and punitive damages (Count VIII). In addition, Weismann has asserted a declaratory judgment claim (Count II), a material breach claim (Count IV), and an unjust enrichment claim (Count VII).

Development Services Agreement are each part of one overall contract that Weismann and the Developer may directly enforce.

Under Missouri law, a contract can consist of multiple documents. *Missouri Farmers Ass'n, Inc. v. Barry,* 710 S.W.2d 923, 926 (Mo. Ct. App. 1986). If the several instruments are made at the same time, in relation to the same subject-matter, they may be read together as one instrument. *Massachusetts Bonding & Ins. Co. v. Feutz*, 182 F.2d 752, 757 (8th Cir. 1950). This rule applies, even when the parties are not the same, if the several contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose. *Id.* Whether instruments made at the same time and relating to the same subject constitute a single contract, should be determined in light of the intention of the parties and with regard to the realities of the situation. *State v. Nationwide Life Ins. Co.,* 340 S.W.3d 161, 183 (Mo. Ct. App. 2011). The parties' intent regarding the number of documents constituting the contract is determined from the entire instrument or instruments, subsidiary agreements, and relevant external circumstances. *Missouri Farmers,* 710 S.W.2d at 926.

Here, the LPA, the Guaranty Agreement and the Development Services Agreement were executed together to accomplish an agreed purpose, were known to all parties, and all were related to the Partnership transaction. Significantly, the language of the LPA itself strongly indicates the multiple instruments were intended to be read together. The clause at Section 16.7 of the LPA, entitled, "Entire Agreement," appears to establish the Guaranty Agreement and the Development Services Agreement are integrated parts of the LPA. Section 16.7 states that:

> [The LPA], together with the Exhibits and Schedules hereto and the Development Services Agreement, contains the entire understanding between and among the parties and supersedes any prior understandings and agreements between and among them respecting the subject matter of [the LPA].[4]

[4] Federal Rule of Procedure 10(c) provides, in part, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See also Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244

Other circumstances indicate the parties likely intended the various instruments to be read together. For example, the Guaranty Agreement was attached as Exhibit E to the LPA. In addition, the Guaranty Agreement and the Development Services Agreement were considered "Closing Documents." *See* LPA § 3.9.B. Moreover, the LPA closing was conditioned on the execution and delivery of the Guaranty Agreement and the Development Services Agreement, in a form and substance satisfactory to the Investor Limited Partner. *See* LPA § 3.9.B. Hinging one contract upon the execution of another contract heightens the need for joint interpretation. *See Dakota Gasification Co. v. Nat. Gas Pipeline Co. of Am.*, 964 F.2d 732, 735 (8th Cir. 1992).

While the language of the LPA in Section 16.7 strongly indicates all three instruments were interdependent and meant to be considered together, whether they constitute a single contract requires a complete determination of the parties' intent. Weismann and the Developer have, however, at this preliminary stage, set forth plausible claims asserting rights as parties to one complete integrated contract.

## C. Declaratory Judgment Claims and Equitable Claims fail because an adequate remedy at law exists.

Defendants argue the General Partner's claim seeking declaratory relief under Count I, Weismann's declaratory relief claims under Counts II and IV, and Weisman's claim for unjust enrichment under Count VII should be dismissed.

With regard to the claims for declaratory relief, Defendants argue Counts I, II, and IV should be precluded because Plaintiffs' breach of contract claim set forth in Count III provides

---

(8th Cir. 2006) ("[W]ritten instruments attached to the complaint become part of it for all purposes. For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.") (internal citations omitted).

an adequate remedy at law. Plaintiffs counter that their allegations establish an actual controversy under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Motion to Dismiss should be denied.

Federal courts have a discretionary power to determine whether or not to exercise jurisdiction in a declaratory judgment action. *State Farm Mut. Auto. Ins. Co. v. Bonwell*, 248 F.2d 862, 865 (8th Cir. 1957). Federal Rule of Civil Procedure 57 governs declaratory judgment actions and provides, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Federal Rule of Civil Procedure 8(a)(3), allows a party to demand relief "in the alternative or different types of relief." Rule 8(d)(2) further provides, "A party may state as many separate claims or defenses as it has, regardless of consistency."

Rule 57, however, "is not construed to mean a declaratory judgment action will lie whenever there is a pending controversy, regardless of the need for it." *Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, No. 4:06-CV-1308 (CEJ), 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007) (quotation omitted). "[A] declaratory judgment action should lie only in cases where it could be of some practical convenience to the parties." *Id.* (quotation omitted). Dismissal of a claim for declaratory relief is appropriate where adjudication of a breach of contract claim would render the request for declaratory judgment moot or redundant. *See Amerisure*, 2007 WL 2811080 at *2.

Here, the declaratory relief sought does not appear duplicative of Plaintiffs' breach of contract claims. In Counts III and V, Plaintiffs seek damages related to Defendants' alleged material breaches of the LPA and the covenant of good faith and fair dealing. In contrast, in Counts I, II, and IV, declaratory judgment is sought as follows: the General Partner seeks a

declaration reducing the respective interests of the Investor Limited Partner and State Limited Partner to zero and allocating their housing tax credits and losses to the General Partner (Count I); Weismann seeks a judgment excusing him from further performance as a surety (Count II); and, Weismann asserts the prior material breaches of Defendants excuse him from further performance as a surety under the LPA or otherwise (Count IV).[5]

Thus, Plaintiffs' claims for declaratory relief seek relief beyond damages—a determination of the respective interests of the parties under the LPA, as well as clarification of Weismann's continuing obligation as a surety. *See City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 193 (Mo. Ct. App. 2004) (observing that declaratory judgment may be appropriate in circumstances where it is desirable that the relationship of the parties be established because there may be a continuing relationship or future acts which depend on the outcome). Notably, the LPA contemplates an ongoing relationship between the parties through 2020 as the project tries to remain housing tax credit qualified. Because it is not evident Counts I, II, and IV will be rendered moot by Plaintiffs' contract claims in Counts III and V, the safer course for this Court to follow, at this early stage in litigation, is to deny Defendants' request for dismissal.

Defendants also seek dismissal of Count VII where Plaintiff Weismann contends Defendants were unjustly enriched as Weismann funded in excess of $500,000 in operating deficits. Weismann asserts he is entitled to equitable contribution and restitution from Defendants for all excess amounts he funded. Defendants contend Weismann's claim for unjust enrichment is barred as an express contract—the LPA—governs the obligations of the parties.

---

[5] Weismann also seeks an underlying determination of the date Rental Achievement was attained. This date is significant to Weismann as his continuing obligation as a guarantor has a "Sunset Date" on it. Weismann is required to fund operating deficits from the time Rental Achievement is attained until the third anniversary of that date (the "Sunset Date").

14

Plaintiff counters that the existence of an express contract does not bar his claim as Rule 8 expressly permits him to plead alternative claims, regardless whether or not they are consistent with one another.

A claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable. *Mays–Maune & Assoc., Inc. v. Werner Bros., Inc.,* 139 S.W.3d 201, 205 (Mo. Ct. App. 2004). These elements were met as Plaintiffs' complaint alleged that: the Limited Partners failed to make contractual financial contributions to the Partnership; as a result, Weismann had to fund in excess of $500,000.00 in operating deficits to the General Partner; the General Partner then made operating deficit loans to the Partnership; Weismann funded more than his share of financial contributions due the Partnership; the funding of deficits permitted Water Tower Place to continue to operate and generate tax credits; Defendants knew Weismann was funding operating deficits; they refused to make their required capital contribution, but continued to receive the full economic benefit of the housing tax credits.

Although Plaintiff states a plausible claim for relief, Defendants argue this claim is nonetheless barred by the existence of an express contract governing the parties' rights. In cases where there is an express contract, the remedy of restitution for unjust enrichment is not available; it is at most an alternative claim. *Armbruster v. Mercy Medical Group*, 465 S.W.3d 67, 73 (Mo. Ct. App. 2015). A claim for unjust enrichment is founded upon equitable principles whereby the law implies a contract. *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014). It is a well-settled principle of law that implied contract claims arise only where there is no express

contract. *Id.* A plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover. *Id.*

Here a determination is pending as to whether the parties intended the LPA, Guaranty and Development Services Agreement to constitute a single contract. Until it is resolved whether one unified express contract governed Weismann's rights, the Court will permit Weismann to plead an alternative claim of unjust enrichment in accordance with Rule 8, which allows inconsistent and alternative claims to be pled. Accordingly, Count VII will not be dismissed.

### D. Plaintiffs' Tortious Interference Claim Fails.

Defendants also ask the Court to dismiss Weismann and the Developer's claim of tortious interference with contractual relations against Alliant[6] under Count VI. Weismann and the Developer allege Alliant intentionally caused the State and Investor Limited Partners to unjustifiably refuse to make full payment of contributions to the Partnership. They maintain Alliant, without justification, interfered with and induced the Limited Partners to breach the LPA, causing Plaintiffs to suffer damages. Defendants contend dismissal is warranted as Plaintiffs failed to properly plead the required elements of a claim for tortious interference.

Under Missouri law, to bring a claim for tortious interference, a plaintiff must allege (1) a contract exists of a "valid business relationship or expectancy;" (2) the defendant has knowledge of the contract or relationship; (3) the defendant interferes with the contract or relationship; (4) Defendant lacked justification; and (5) damage to the plaintiff resulted. *Brown v. First Health Grp. Corp.*, No. 4:07CV01852NLJ, 2009 WL 440489, at *7 (E.D. Mo. Feb. 20, 2009), on reconsideration in part, No. 4:07CV1852SNLJ, 2009 WL 1940373 (E.D. Mo. July 7, 2009);

---

[6] In the complaint, Plaintiffs define "Alliant" as follows: "Upon information and belief, Asset Management, Capital, Credit Facility, Credit Facility ALP, and the Limited Partners are Affiliates that operate together, and/or in combination under the corporate umbrella of the Alliant Company (collectively, "Alliant")."

*Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. banc 1993); *Schott v. Beussink*, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997).

The absence of justification is an essential element of the claim for interference with contract. *Schott ,* 950 S.W.2d at 628. Missouri courts have stated that a defendant who has a valid, existing economic interest in a contract is justified in inducing its breach, unless the defendant uses improper means to induce the breach. *Lick Creek Sewer Sys., Inc. v. Bank of Bourbon*, 747 S.W.2d 317, 323 (Mo. Ct. App. 1988). "Improper means are those which are independently wrongful notwithstanding injury caused by the interference." *Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d 691, 703 (Mo. Ct. App. 2005). Pleading "improper means" usually requires allegations of threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law. *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 192 (Mo. Ct. App. 2007). Such improper means must be pled. *Lick Creek*, 747 S.W.2d at 323. Mere conclusions of a pleader not supported by factual allegations cannot be taken as true, and therefore, must be disregarded in determining whether the petition states a claim upon which relief can be granted. *Schott*, 950 S.W.2d at 629.

Defendants assert Plaintiffs failed to establish the element of "absence of justification" as Plaintiffs did not allege Alliant used improper means by committing an independently wrongful act. Defendants maintain Plaintiffs only pleaded in a conclusory fashion that Defendants caused a breach of the LPA without justification. The Court agrees this allegation alone would not support a claim as it is a mere formulaic recitation of the element and lacks the required factual assertions to establish improper means. However, Plaintiffs counter the complaint did set forth supporting facts describing how Alliant induced the Limited Partners to breach the LPA by

failing to make required capital contributions. Specifically, Plaintiffs point out, in order to avoid making a capital contribution, Alliant simply denied, without explanation, Water Tower Place attained Rental Achievement. According to the complaint, Alliant's challenge was "not made in good faith for the true purpose of hindering, delaying and avoiding payment of the Capital Contributions."

The Court does not find Plaintiffs' allegations are sufficient to establish a lack of justification for their interference. Here, Alliant has an existing economic interest in the business affairs of the Limited Partners, and, therefore, the Partnership. As such, they were entitled to actions protecting their economic interest *unless* they employed improper means. In an attempt to establish improper means, Plaintiffs, in their Memorandum in Opposition, attempted to characterize Alliant's alleged challenge to Water Tower Place's attainment of Rental Achievement as an improper "misrepresentation of fact." However, the alleged denial is more properly categorized as a dispute over a contract term. And here, Plaintiffs concede the required deadline was met five years in arrears. Thus, Plaintiffs fail to properly plead facts showing Defendants used improper means and "lacked justification." Because Plaintiffs fail to establish an element of tortious interference, Defendants Motion to Dismiss Count VI will be granted.

### E. Plaintiffs' Punitive Damages Claims Fail.

Defendants further contend Plaintiffs' claims for punitive damages under Count VIII must be dismissed. Defendants maintain punitive damages are unavailable for Plaintiffs' breach of contract claims and Plaintiffs have failed to plead a viable tort claim. In Count VIII, Plaintiffs allege the Limited Partners and Alliant's bad-faith refusal to pay capital contributions and Alliant's conduct denying the attainment of Rental Achievement entitles Plaintiffs to an award of punitive damages.

The general rule is punitive damages may not be recovered in breach of contract actions. *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 902 (Mo. 1990). This rule applies even where the breach is intentional, willful, wanton or malicious. *Id.* at 903 (listing cases). There is an exception to this general rule where the breaching party's conduct, apart from an intentional breach of the contract, amounts to a separate, independent tort. *Id.* at 902-03.[7] The plaintiff must expressly plead this exception in order to recover punitive damages in a breach of contract action. *Id.* at 904. There must be proper allegations of the independent tort. *Id.*

Here, Plaintiffs only specifically plead one intentional tort—tortious interference with contract under Count VI. As discussed above, however, Plaintiffs fail to state a claim for relief under this cause of action and Count VI will be dismissed. Without a remaining claim, separately alleging an independent tort, Plaintiffs' punitive damages claim under Count VIII also fails to state a claim for relief and must be dismissed.

### F. Plaintiffs' group allegations against Defendants fail to meet pleading standards under *Iqbal* and *Twombly*.

Defendants argue Plaintiffs' group allegations against Defendants should be dismissed as they fail to meet the federal pleading standards under *Iqbal* and *Twombly*.[8] Specifically, Defendants state the complaint lumps Defendants (Alliant Asset Management, Alliant Capital, Alliant Credit Facility, Alliant Credit Facility ALP and the Limited Partners) together, referring to them collectively as "Alliant," without identifying specific claims and allegations against each Defendant. Defendants argue this type of group allegation is insufficient to withstand a 12(b)(6) motion.

---

[7] Missouri also has a narrow fiduciary-duty exception for punitive damages in the context of contract claims. *Peterson*, 783 S.W.2d at 902. This exception is not at issue here.
[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A complaint "satisfies the requirements of Rule 8(a) [when] it gives [Defendants] fair notice of the basis for [Plaintiffs'] claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "[Rule 8(a)(2)] requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and alterations omitted).

The complaint has set forth a basis for asserting group allegations against "Alliant." The complaint states Alliant Asset Management, Alliant Capital, Alliant Credit Facility, Alliant Credit Facility ALP and the Limited Partners are affiliates that operate together under the corporate umbrella of the Alliant Company (collectively, "Alliant") to syndicate affordable housing and tax credit investments. Plaintiffs described the nature of each Defendant's relationship to the project. The complaint further alleges commonality of management among the entities and that they engaged in joint action. Plaintiffs aver that decisions made by the Limited Partners were in actuality made by Alliant management and employees. Plaintiffs claim that if they were unable to discern which Alliant entity's conduct was at issue, Plaintiffs credited the conduct to Alliant as the overall enterprise in; otherwise, Plaintiffs maintain they identified the specific entity in the pleadings.

Upon a detailed review of the complaint, the Court finds Plaintiffs have pleaded sufficiently detailed factual allegations of conduct to give Alliant "fair notice of what the claim is and the grounds upon which it rests." Although the complaint does not identify, on a defendant-by defendant basis, the specific actions taken by each Alliant entity, Defendants are nevertheless

adequately apprised of the claims against them. Accordingly, the Court declines to dismiss Plaintiffs' group allegations against Alliant.

**G. Motion to Strike Jury Demand.**

Defendants also motion the Court to strike Plaintiffs' demand for a jury trial. Defendants argue Plaintiffs' jury demand must be stricken because Plaintiffs knowingly and voluntarily waived their rights to a jury trial in connection with the LPA and the Guaranty Agreement--the contracts forming the basis of the Plaintiffs' claims. Plaintiffs counter Defendants failed to meet their burden to establish waiver and the motion should be denied.

"Although the jury-trial right can be waived, the right is fundamental," and courts must "indulge every reasonable presumption against its waiver*." Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 849 (8th Cir. 2014) (quotation marks, citation, and bracketing omitted). However, "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Popular Leasing USA, Inc. v. Austin Auto. Warehouse Corp.*, No. 4:04-CV-1619-TCM, 2005 WL 1798088, at *1 (E.D. Mo. July 27, 2005) (quotation marks and citation omitted). "A demand for a jury trial may be waived by either a written or oral stipulation." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000); *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, No. 4:16-CV-140-CEJ, 2016 WL 2643359, at *2 (E.D. Mo. May 10, 2016).

Accordingly, "a party may waive its right to a jury trial under the terms of a contract." *Regions*, 2016 WL 2643359, at *2. *See also JB Hanna,* 766 F.3d at 849. "For a waiver to be effective, the party waiving the right must do so 'voluntarily' and 'knowingly' based on the facts of the case." *Regions*, 2016 WL 2643359, at *2. Courts in the Eighth Circuit have considered a number of factors to determine whether a contractual waiver of the right to a jury was knowing and voluntary. *Id.* The following non-exhaustive considerations bear on this analysis: (1) whether

the waiver provision is "in fine print or in large or bold print," (2) whether it is set off in a paragraph of its own, (3) whether the provision is in a take-it-or-leave-it or in a negotiated contract, and (4) the conspicuousness of the waiver compared to the length of the contract. *Id.*

Here, both the LPA and the Guaranty contain provisions waiving the right to a jury trial. Section 16.18 of the LPA states, "[e]ach party hereto hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury . . . ." Likewise, § 26 of the Guaranty Agreement, to which Plaintiffs Weismann and the Developer are parties, specifically waives any right to a jury trial. Moreover, both of the waivers in these negotiated agreements were in separate paragraphs, written in all caps, and were the final provision located before the signature block. Thus, the Court finds Plaintiffs knowingly and voluntarily waived their rights under the LPA and Guaranty. The Court will strike Plaintiffs' demand for a jury trial.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [ECF No. 17] is **GRANTED**, in part, and **DENIED**, in part.

**IT IS FURTHER ORDERED** that Defendants' Counts VI and VIII are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Jury Demand [ECF No. 17] is **GRANTED.**

So ordered this 15th day of February, 2017.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**