UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NTD I, LLC, NORTH TOWER DEVELOPMENT, LLC, and PAUL WEISMANN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:16-CV-1246 ERW ) |
| ALLIANT ASSET MANAGEMENT COMPANY, LLC, ALLIANT CAPITAL, LTD., ALLIANT CREDIT FACILITY ALP, LLC, ALLIANT TAX CREDIT FUND 36, LTD., and ALLIANT TAX CREDIT 36, LLC., | ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| ALLIANT TAX CREDIT FUND 36, LTD., and ALLIANT TAX CREDIT 36, LLC, | ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | ) ) |
| NTD I LLC, PAUL WEISMANN, and WC ORANGE LLC, | ) ) ) ) |
| Counterclaim Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs NTD I, LLC, Paul Weismann, and WC Orange, LLC's Motion for Summary Judgment on Counterclaim Counts III and IV [105] and Counterclaim Plaintiffs' Motion for Preliminary Injunction [116].

1

**I.  BACKGROUND**

This lawsuit originated in the Eastern District of Missouri when NTD I, LLC ("NTD"), North Tower Development, LLC, and Paul Weismann ("Weismann") filed a complaint on August 1, 2016, asserting various claims against Alliant Asset Management Company, LLC, Alliant Capital, Ltd., Alliant Credit Facility, Ltd., Alliant Credit Facility ALP, LLC, Alliant Tax Credit Fund 36, Ltd., and Alliant Tax Credit 36, LLC related to a limited partnership agreement between the parties [1].

Following this Court's dismissal of some of the claims, Alliant Tax Credit Fund 36, Ltd. and Alliant Tax Credit 36, LLC ("Counterclaim Plaintiffs") asserted the following counterclaims in their Third Amended Counterclaims: (1) declaratory relief against NTD and Weismann stating they failed to cause Rental Achievement as required under the Limited Partnership Agreement; (2) breach of contract and injunctive relief against NTD and Weismann for withdrawing funds from the operating deficit reserve account and the replacement reserve account without approval of the Administrative Limited Partner;[1] (3) breach of contract and injunctive relief against NTD, Weismann, and WC Orange ("WCO") because WCO purchased the debts of the partnership without the consent of the Administrative Limited Partner and WCO is related to the General Partner; (4) breach of fiduciary duty and injunctive relief against NTD, Weismann, and WCO by allowing, participating in, and facilitating the purchase of the Partnership's debt by WCO; (5) breach of contract and declaratory relief against NTD and Weismann for failure to repair material deficiencies and/or non-conformities in the physical property of Water Tower Place; and (6) breach of contract and specific performance against NTD and Paul Weismann for failure to pay for any development deficits which are incurred by the partnership prior to rental achievement.

---

[1] The Administrative Limited Partner is Alliant Tax Credit 36, LLC.

NTD, Weismann, and WCO ("Counterclaim Defendants") filed the instant motion for summary judgment on May 8, 2018, seeking an order: (i) granting summary judgment against Defendants on Counts III and IV of the Amended Counterclaims; and (ii) granting such other and further relief as the Court may deem proper and just [105]. In their Motion for Preliminary Injunction, Counterclaim Plaintiffs are seeking a declaration Weismann and NTD breached fiduciary duties to the Limited Partners and are requesting injunctive relief prohibiting WCO from exercising its mortgage rights against Water Tower Place, and imposing a constructive trust upon that mortgage interest [104].

　　*A. Uncontroverted Facts*

Water Tower Place, L.P. (the "Partnership") is a Missouri limited liability partnership formed on January 9, 2006 [107 ¶1; 125, p. 1 ¶1]. NTD is a for-profit Missouri limited liability company formed as a partnership by and among its members on February 1, 2006 [107 ¶2; 125, p. 2 ¶2]. NTD was formed to be, and is the General Partner of the Partnership [107 ¶3; 125, p. 2 ¶3]. When NTD was formed, Weismann directly acquired and thereafter directly owned twenty percent (20%) of the outstanding NTD membership interest [107 ¶4; 125, p. 2 ¶4]. At the time of formation, four other natural persons, unrelated to Weismann by blood, marriage, or other familial relationship, separately and directly acquired and thereafter directly owned their respective NTD membership interests totaling the remaining eighty percent (80%) of the outstanding General Partner membership interest [107 ¶5; 125, p. 2 ¶5]. All profits and losses and all other tax attributes of NTD are allocated among the General Partner members on the basis of those members' respective percentage of interest in the General Partner [107 ¶6; 125, p. 3 ¶6]. Weismann testified he makes decisions for NTD [130 ¶2; 125, p. 8 ¶2, 4]. NTD's offices are in Weismann's offices in Connecticut [130 ¶3; 125, p. 8 ¶3].

Counterclaim Plaintiffs, Alliant Tax Credit Fund 36, Ltd. and Alliant Tax Credit 36, LLC,also known as the Limited Partners, are the limited partners of the Partnership [107 ¶7; 125, p. 3 ¶7]. The General Partner and the Limited Partners are the parties to the Amended and Restated Agreement of Limited Partnership dated July 1, 2006 ( "LPA") [107 ¶9; 125, p. 3 ¶9]. The Limited Partners have never rescinded the LPA [107, ¶10, 125, p.3, ¶10]. The Partnership financed the acquisition[2] and rehabilitation of the property by a 2006 issuance of tax-exempt Multifamily Housing Revenue Bonds identified in Schedule A of the LPA to create state and federal low income tax credits (the "Bonds") [107 ¶11; 125, p. 3 ¶11]. The Partnership Bond obligations are secured by, among other instruments, loan agreements and covenants (the "Bond Loan Agreement"), and mortgages granted by the Partnership to the Bond holder (the "Bond Mortgage") [107 ¶12, 125, p. 4 ¶12]. At the time of the issuance of the Bonds, U.S. Bank National Association ("USB") was the holder of the Bonds and the Bond Mortgage [107 ¶13, 125, p. 4 ¶13].

On September 8, 2010, Richard Deters, Jr., Executor of the Estate of Richard Deters, Sr., an original General Partner member, assigned the decedent's seven percent (7%) NTD membership interest directly to Weismann [107 ¶14; 125, p. 4 ¶14]. On or about September 13, 2010, George Kruntchev, an original NTD member, assigned his thirty percent (30%) NTD membership interest directly to Weismann [107 ¶15; 125, p. 4 ¶15]. On and at all times after September 13, 2010, Weismann has directly owned fifty-seven percent (57%) of the NTD membership interests [107 ¶16; 125, p. 4 ¶16]. Before, on, and at all times after September 13, 2010, the other two remaining original NTD members, both of whom are natural persons unrelated to Weismann by blood, marriage, or other familial relationship, have owned thirty

---

[2] Defendants claim that it was financed "in part," but provide no support to the record to contest Plaintiffs' statement it was "financed."

4

percent (30%) and thirteen percent (13%), respectively, of the NTD membership interests [107 ¶17; 125, p. 5 ¶17].

WCO is a for-profit Delaware limited liability company (f/k/a/ WC Mapleton LLC) formed on January 19, 2016 [107 ¶19; 125, p. 5 ¶19]. At the time WCO was formed, PAW Associates Properties, LLC ("Properties"), a Delaware limited liability company, directly acquired and has thereafter directly owned one hundred percent (100%) of the outstanding membership interest in WCO [107 ¶21; 125, p. 6 ¶21]. PAW Associates, LLC ("Associates"), a Delaware limited liability company, has at all times directly owned one hundred percent (100%) of the outstanding membership interest in Properties [107 ¶22; 125, p. 6 ¶22]. Weismann and Sam Brill make the business decisions for Properties[3] and for WCO [130 ¶10, 11; 125, p. 9 ¶10, 11].[4] Brill was formerly the Chief Investment Officer of Weismann Capital, and Weismann is the owner and chief executive [130 ¶8, 9; 125, p. 8 ¶8, p. 9 ¶9].[5] Both Weismann and Brill are based in Weismann's Connecticut office [130 ¶11; 125 p. 9 ¶11].

The Paul A. Weismann Descendants' Trust (the "Grantor Trust"), a Delaware grantor trust created by Weismann's father, the late Dietrich Weismann, for the benefit of Weismann and his descendants, has at all times directly owned one hundred percent (100%) of the outstanding membership interest in Associates [107 ¶23; 125, p. 6 ¶23]. Weismann and his wife are the co-trustees of the Grantor Trust [130 ¶6; 125, p. 8 ¶6]. The only beneficiaries of the Grantor Trust

---

[3] The testimony referenced by Counterclaim Plaintiffs in support of this statement refers to "P.A.W. Associates Properties," which is a different entity than PAW Associates (Ex. B. at 23:6-23).
[4] In their response to Counterclaim Defendants' Statement of Uncontroverted Material Facts, Counterclaim Plaintiffs stated Weismann and Brill "make **all** the decisions for PAW Associates" (emphasis added), but the supporting deposition testimony only specifies "the decisions" (Ex. B. at 23:6-23). Further, in the Reply Memorandum in Support of their motion for summary judgment, Counterclaim Defendants pointed out Weismann testified that Brill has more decision making power and control over WCO than he does (Ex. B. at 197:16-20).
[5] In their response to Counterclaim Defendants' Statement of Uncontroverted Material Facts, Counterclaim Plaintiffs claimed that Brill is currently the Chief Investment Officer, but Counterclaim Defendants denied this, stating that he no longer holds this title.

are Weismann and his three minor children [107 ¶24; 125, p. 6 ¶24].[6]

On June 28, 2016, WCO purchased from USB all of its right, title, and interest in and to the Bonds and the Bond Mortgage, and all of the USB rights under the Bond Loan Agreement pursuant to a Purchase Agreement of the same date [107 ¶25; 125, p. 7 ¶25]. The WCO purchase of the Bonds, the Bond Mortgage, and the rights under the Bond loan Agreement is only one of the private real estate investments held by WCO [107 ¶21; 125, p. 7 ¶26]. Weismann does not, nor has he ever directly or indirectly owned any stock, membership, or other equity interest in either of the Limited Partners [107 ¶27; 125, p. 7 ¶29]. The General Partner, Properties, Associates, WCO, and Grantor Trust have not, nor have they ever directly or indirectly owned any stock, membership, or other equity interest in either of the Limited Partners [107 ¶¶27-32; 125, pp. 7-8 ¶¶27-32].

In 2016, WCO purchased the Mortgage Note on the Partnership with a face price of $3.7 million for $2.1 million [130 ¶12; 125, p. 9 ¶12]. On April 27, 2018, WCO sent a notice of loan acceleration to the General Partner, the Partnership, and the Limited Partners [130 ¶17; 125, p. 9 ¶17]. On May 7, 2018, Limited Partners made a demand pursuant to Weismann's Guaranty Agreement and the terms of the LPA that Weismann pay the full amount of the accelerated loan [130 ¶22; 125, p. 10 ¶22]. Weisman rejected this demand [130 ¶22; 125, p. 10 ¶22]. Weismann viewed the relationship with Counterclaim Plaintiffs, in particular, as an "adversarial relationship" [130 ¶21; 125, p. 10 ¶21].

## II. STANDARD

### A. *Summary Judgment*

---

[6] In their response to Counterclaim Defendants' Statement of Uncontroverted Material Facts, Limited Partners claim that Weismann's wife is a beneficiary of the Grantor Trust but do not provide evidence beyond Exhibit B, in which Weismann states that only he and his three children are beneficiaries. (Ex. B at 225:23-226:4)

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts demonstrating a genuine dispute on the specific issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). The non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in

the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

  B. *Preliminary Injunction*

Federal Rule of Civil Procedure 65 gives courts the authority to grant preliminary injunctions. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that movant will succeed on the merits, and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Although "'no single factor is determinative,' the probability of success factor is the most significant." *Home Instead, Inc. v. Florance,* 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Barrett v. Claycomb,* 705 F.3d 315, 320 (8th Cir. 2013)) (internal citations omitted). "The burden of demonstrating that a preliminary injunction is warranted is a heavy one where, as here, granting the preliminary injunction will give plaintiff substantially the relief [she] would obtain after a trial on the merits." *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991). *See also Blankenship v. Chamberlain*, 2008 WL 4862717, at *2 (E.D. Mo. Nov. 7, 2008) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th

Cir. 2001)) (In seeking a mandatory injunction that disrupts the status quo, the plaintiff "must demonstrate not only that the four requirements for a preliminary injunction are met but also that they weigh heavily and compellingly in [her] favor.").

## III. DISCUSSION

### A. *Motion for Summary Judgment*

In their motion for summary judgment on Counts III and IV of the third amended counterclaims, Counterclaim Defendants assert two primary arguments. First, they argue the LPA does not prohibit WCO from acquiring the mortgage bonds. Second, they contend, they do not owe any duties to Counterclaim Plaintiffs, nor did they breach, any fiduciary duties to Counterclaim Plaintiffs.

#### i. *Acquisition of the Mortgage Bonds*

Counterclaim Defendants assert the Court should grant summary judgment in favor of them on Count III of Counterclaim Plaintiffs' Third Amended Counterclaims. Count III includes the following allegations:

Weismann guaranteed each and every obligation of the General Partner under the LPA and he is bound by the prohibition against acquiring indebtedness of the Partnership. WCO is an entity related to the General Partner and controlled by Weismann. To induce the bank to sell the debt to WCO, Weismann made certain representations and warranties on behalf of the General Partner and Partnership. The transaction was completed without the consent of the Administrative Limited Partner.[7] NTD breached the LPA by participating in and authorizing WCO to purchase the debt. Weismann breached his obligations under the Guaranty by allowing the General Partner to participate in the transaction and authorizing WCO to purchase the debt.

---
[7] According to the Third Amended Counterclaims, the Administrative Limited Partner is Alliant Tax Credit 36, LLC.

The uncontroverted facts state in June 2016, WCO purchased from USB the mortgage note[8] for Water Tower Place. WCO is 100% owned by Properties, which is 100% owned by Associates. The Paul A. Weismann Descendants' Trust owns 100% of Associates. Weismann and his wife are co-trustees of the trust and Weismann and his children are the beneficiaries. Weismann also owns 57% of the General Partner, NTD; the remaining shares of NTD are owned by two unidentified individuals, not related to Weismann. Because of Weismann's relationship to the various entities involved in the sale of the mortgage note, Counterclaim Plaintiffs assert the transaction violates the LPA.

> Section 5.5B of the LPA states:
>
> B. No General Partner shall have any authority to do any of the following acts on behalf of the Partnership, except with the Consent of the Administrative Limited Partner and the approval, to the extent required, of any Credit Agency to any Lender:
> . . .
> (ii) Acquire, become personally liable on or in respect of, or guarantee, directly or indirectly (or allow any person related to any General Partner or Limited Partner, within the meaning of Section 752 of the Code, to acquire, become liable on or guaranty), all or any portion of a Mortgage Note or a Mortgage or, except as otherwise contemplated herein or in the Development Services Agreement, any other indebtedness of the Partnership . . . .

This provision states the General Partner cannot acquire the mortgage note, either directly or indirectly. Therefore, according to the contract, NTD, the General Partner, is prohibited from purchasing the mortgage note. There is nothing to prevent Weismann, who is not the General Partner, from purchasing the note, either directly, or indirectly. Counterclaim Plaintiffs' argument conflates NTD and Weismann, which are separate legal entities. *See State ex rel. Family Support Div. v. Steak'm Take'm, LLC*, 524 S.W.3d 584, 592 (Mo. Ct. App. 2017) (Finding a LLC is considered a separate legal entity that is distinct from its members or owners.).

---

[8] In the briefs, there is reference to "Bonds, Bond Mortgage, and all USB rights under the Bond Loan Agreement" and "the mortgage note." References to "mortgage note" for the purposes of this opinion includes "Bonds, Bond Mortgage, and all USB rights under the Bond Loan Agreement.

Section 5.5(B)(ii) of the LPA prohibiting "any person related to any General Partner or Limited Partner, within the meaning of Section 752 of the Code, to acquire, become liable on or guaranty" the mortgage note also does not prevent Weismann or WCO from acquiring the note. Section 752 of the Internal Revenue Code refers to increases or decreases in a partner's liabilities. 26 U.S.C. § 752. The regulations to Section 752 refer to and define "related person":

> (b) A person is related to a partner if the person and the partner bear a relationship to each other that is specified in section 267(b) or 707(b)(1), subject to the following modifications:
> (i) Substitute "80 percent or more" for "more than 50 percent" each place it appears in those sections;

Treas. Reg. § 1.752-4. Section 707(b)(1) states:

> Losses disallowed. –No deduction shall be allowed in respect of losses from sales or exchanges of property (other than an interest in the partnership), directly or indirectly, between-
> (A) a partnership and a person owning, directly or indirectly, more than 50 percent of the capital interest, or the profits interest, in such partnership, or
> (B) two partnerships in which the same persons own, directly or indirectly, more than 50 percent of the capital interests or profits interests.

26 U.S.C. § 707(b)(1). Section 627(b) states:

> Relationships.—The persons referred to in subsection (a) are:
> (1) Members of a family, as defined in subsection (c)(4);
> (2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such an individual;
> (3) Two corporations which are members of the same controlled group (as defined in subsection (f));
> (4) A grantor and a fiduciary of any trust;
> (5) A fiduciary of a trust and a fiduciary of another trust, if the same person is a grantor of both trusts;
> (6) A fiduciary of a trust and a beneficiary of such trust; . . .

26 U.S.C. 267(b). Thus, Weismann, or WCO, is related to NTD if Weismann or WCO, or both, own eighty percent or more of NTD. The uncontroverted facts, filed by the parties, state Weismann owns only 57% of NTD. The remaining 43% is owned by two other individuals. WCO does not own, nor is it a member of NTD. Weismann and WCO are not related to NTD

11

under the Code and Regulations of the IRS and the LPA.

Counterclaim Plaintiffs also argue NTD indirectly purchased the mortgage note through WCO. According to Counterclaim Plaintiffs, WCO is controlled by Weismann, who makes decisions for WCO, and NTD is controlled by Weismann. Further, Plaintiffs allege Weismann agreed to the sale of the debt on behalf of WCO and consented to the acquisition on behalf of NTD. However, this argument also fails. NTD, who is the general partner, does not own any interest in WCO, Associates, Properties, or the Trust. Therefore, NTD did not indirectly purchase the mortgage note, WCO purchased the mortgage note. WCO is not prohibited by the contract from purchasing the mortgage note because it is not the general partner. WCO, Weismann and NTD are separate legal entities.

Under these provisions of the LPA, NTD did not breach the LPA when WCO purchased the mortgage note. However, the Third Amended Counterclaims also allege Weismann personally breached the contract, because he guaranteed, through the Guaranty attachment to the LPA, each and every obligation of the General Partner under the LPA. It further alleges Weismann is bound by the prohibition against acquiring indebtedness of the partnership because he is responsible for the management and control of the General Partner. These allegations were never addressed by either party in the briefs on Count III for the Motion for Summary Judgment. It is briefly mentioned in Counterclaim Plaintiffs' response but is never addressed in Counterclaim Defendants' Motion or Reply. The Court cannot grant summary judgment on an issue not raised or discussed by the parties. *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003). Therefore, the Court will grant summary judgment as to WCO and NTD, but will deny it as to Weismann.

      ii.      *Breach of Fiduciary Duties*

In their Motion, Counterclaim Defendants assert summary judgment should be granted in their favor on Count IV for breach of fiduciary duty and injunctive relief against NTD, Weismann, and WCO. Count IV alleges Weismann and NTD breached their fiduciary duties owed to Counterclaim Plaintiffs when it participated in, facilitated, and consented to WCO acquiring the mortgage note.

To establish a breach of fiduciary duty, Counterclaim Plaintiffs must show (1) the existence of a fiduciary duty between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm. *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012). Whether a fiduciary duty exists is a question of law for the Court to decide. *Id*. A fiduciary duty may arise from the parties' relationship or as a result of special circumstances. *Pool v. Farm Bureau Town & Country Ins. Co. of Mo.*, 311 S.W.3d 895, 907 (Mo. Ct. App. 2010). A fiduciary duty is created when one party is subservient to the other; things of value, which are the property of the subservient party, are possessed or managed by the dominant party; there is a surrender of independence by the subservient party to the dominant party; there is a manipulation of the actions of the subservient party by the dominant party; and there is a showing the subservient party places a trust and confidence in the dominant party. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo. Ct. App. 1983).

There is no evidence of a fiduciary relationship between Weismann and Counterclaim Plaintiffs. Counterclaim Plaintiffs argue Weismann owes the same fiduciary duties as NTD, because Weismann is the manager of the property as the majority owner and sole manager of NTD. In support, Counterclaim Plaintiffs cite to cases stating a corporation acts through its agents and employees and is responsible for the acts of its agents. *See Valentine-Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 54 (Mo. Ct. App. 1999); *Globe Indem. Co. v. First Nat.*

*Bank*, 133 S.W.2d 1066, 1071 (Mo. Ct. App. 1939). These cases do not state an agent is responsible for the acts of the corporation, or that the corporation's actions can be imputed onto the agent. NTD's actions are not imputed to Weismann.

To impute liability from NTD to Weismann, Counterclaim Plaintiffs need to pierce the corporate veil. *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. Ct. App. 2014). To pierce the corporate veil, Counterclaim Plaintiffs must demonstrate: (1) Complete domination of NTD by Weismann, (2) the control must have been used to commit fraud or wrong, to violate a statutory or legal duty, or a dishonest and unjust act in contravention of Counterclaim Plaintiffs' legal rights, and (3) the control and breach of duty must proximately cause the injury. *Id*. Counterclaim Plaintiffs fail to demonstrate these elements in their brief. Therefore, the corporate veil is not pierced and fiduciary duties will not be imputed from NTD to Weismann on this basis.

Weismann's status as a member and manager of NTD also does not create a fiduciary duty. S*ee* Mo. Rev. Stat. § 347.057 ("A person who is a member, manager, or both, of a limited liability company is not liable, solely by reason of being a member or manager, or both, . . . for a debt, obligation or liability of the limited liability company, whether arising in contract, tort, or otherwise . . .").

Counterclaim Plaintiffs cite two cases in support of their arguments. First, in *Koester v. American Republic Investments, Incorporated*, the Eighth Circuit held an individual breached his fiduciary duties to the limited partners when he failed to account to the limited partners for sales of property and failed to give adequate notice of an impending foreclosure. 11 F.3d 818, 823 (8th Cir. 1993). Even though the individual was not the general partner, but he owned all of the stock, the Eighth Circuit held the individual owed fiduciary duties to the limited partners personally because he represented he would personally manage the partnership properties. *Id*. These same

circumstances are not present here. Weismann did not represent he would personally manage the partnership properties. Thus, *Koester* is not a basis for imposing fiduciary duties on Weismann.

The second case is *Ebest v. Bruce*, 734 S.W.2d 915 (Mo. Ct. App. 1987). In *Ebest*, the general partners, who were two individuals, purchased the debt of the partnership without informing the limited partners. *Id*. at 921-22. The Missouri appellate court held "where a general partner of a limited partnership acts with complete control he stands in the same position to the limited partners as a trustee stands to the beneficiary of a trust." *Id*. at 922. Further, the court stated the defendants were statutorily accountable as trustees or fiduciaries to their limited partners under the Uniform Partnership law. *Id*. at 921. The circumstances are, again, different here. Weismann, as an individual, is not a general partner. Thus, he is not accountable to Counterclaim Plaintiffs as a trustee or fiduciary. There is no support in the law for Weismann being held responsible for fiduciary duties to Counterclaim Plaintiffs, separate and apart from his duty under a guaranty, which is not at issue here. Therefore, the Court will grant summary judgment on Count IV as to Weismann.

For these same reasons, there is also no support in the record or the law for WCO to be held accountable for fiduciary duties owed to Counterclaim Plaintiffs. WCO is not a general partner, nor is it a party to the LPA. It has no ownership in NTD, so there is not a corporate veil to be pierced. The Court will also grant summary judgment on Count IV as to WCO.

Count IV against NTD is all that remains. NTD does not challenge whether it owes fiduciary duties to Counterclaim Plaintiffs. Instead, NTD asserts it did not breach any fiduciary duty by consenting to the purchase of the mortgage note by WCO. According to NTD, because the purchase of the mortgage note did not violate the LPA, it also did not breach any fiduciary duties. The Court determined, *supra*, NTD's consent to the purchase did not violate the LPA,

because WCO is not related to NTD. Thus, it must also conclude NTD did not breach a fiduciary duty for consenting to the purchase. Summary judgment on Count IV for NTD will be granted.

  B.   *Motion for Preliminary Injunction*

In their Motion for Preliminary Injunction, Counterclaim Plaintiffs request a preliminary injunction preventing WCO from foreclosing on the mortgage of Water Tower Place. Counterclaim Plaintiffs assert they are threatened with irreparable harm if foreclosure occurs, the irreparable harm outweighs any potential harm to Counterclaim Defendants, they are likely to succeed on the merits, and the public interest would be served by the granting of the preliminary injunction.

As noted above, when determining whether a preliminary injunction should issue, a court should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties' litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "The question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*. No single factor is determinative. *Id*.

  1.   Irreparable Harm

Counterclaim Plaintiffs assert they will face irreparable harm if the preliminary injunction is not granted. According to Counterclaim Plaintiffs, they are facing the loss of the apartment complexes as low-income housing, the recapture of tax credits, damage to their business reputation and goodwill with customers and investors, and loss of their standing with government agencies and regulators. Counterclaim Plaintiffs also argue the partnership agreement itself states the harm is irreparable. In response, Counterclaim Defendants contend

Counterclaim Plaintiffs face only economic damages and damages to business reputation or goodwill cannot form the basis of irreparable harm.

Counterclaim Plaintiffs must establish the "harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). The irreparable harm Counterclaim Plaintiffs face if the property is foreclosed is not merely economic damages. Loss of reputation and goodwill can constitute irreparable injury. *United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 741 (8th Cir. 2002). Their business reputation will be affected because they will have to continually report the foreclosure. Further, real property is unique, and monetary relief is inadequate compensation for the loss of property. *O'Hagen v. United States*, 86 F.3d 776, 783 (8th Cir. 1996). Finally, the LPA itself states if there is a material breach of the contract, the Limited Partners would not have an adequate remedy at law. The first factor in the analysis has been satisfied.

2. Balance of Harms

Next, the Court must consider the balance of harms if the preliminary injunction were to be granted. "The balance of harms analysis examines the harm of granting or denying the injunction upon both the parties to the dispute and upon other interested parties, including the public." *Noodles Dev., LP v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1038 (E.D. Mo. 2007). Courts consider the threat to each of the parties' rights, the potential economic harm to each of the parties and to interested third parties, and whether the non-movant has already taken remedial action. *Id*.

Counterclaim Plaintiffs assert the irreparable harm to them outweighs any potential harm to Counterclaim Defendants, because a preliminary injunction would only prevent them from actions taken in violation of the LPA and their fiduciary duties. Counterclaim Defendants argue

they are harmed because WCO is not receiving any payment so the Partnership is not reducing its debt.

The balance of harms weighs in favor of Counterclaim Plaintiffs. Although the Partnership is not reducing its debt, because it is not making mortgage payments, the harm to Counterclaim Plaintiffs is much greater in losing their tax credits and the property through foreclosure.

3. Likelihood of Success on the Merits

Counterclaim Plaintiffs assert they are likely to succeed on the merits of their Third Amended Counterclaims. As stated *supra*, the Court will grant summary judgment to Counterclaim Defendants on Count IV. On Count III, Counterclaim Plaintiffs have one remaining avenue to succeed on the merits, their assertion Weismann owes the same obligations under the LPA as NTD because of the Guaranty Agreement Weismann signed. The remainder of the Counts in the Third Amended Counterclaims, Counts I, II, V, and VI, are still viable. Additionally, Counterclaim Plaintiffs may show they have a likelihood of success on the merits of the original complaint, in which they are defendants. Counterclaim Plaintiffs need only show a likelihood of success on the merits of a single cause of action. *CPI Card Group, Inc. v. Dwyer*, 294 F. Supp. 3d 791 (D. Minn. 2018).

Counterclaim Plaintiffs have sufficiently shown they have a possibility of success on the merits in regards to whether rental achievement has been met and Weismann's obligations have been discharged. Rental Achievement in the LPA occurs when the following conditions have been fulfilled: "(i) conversion; (ii) all governmental approvals necessary for Occupancy of all units in the Apartment Complex have been obtained; (iii) one hundred percent (100%) Occupancy of the Tax Credit Apartment Units and ninety percent (90%) Occupancy of the

Apartment Complex has occurred during each of three (3) consecutive months (but no earlier than the three (3) consecutive month immediately preceding Conversion), and which produces a Debt Service Coverage Ratio of 1.15 to 1.00 for each of such three (2) consecutive months." The argument on rental achievement centers on whether the debt service coverage ratio was properly calculated. Counterclaim Plaintiffs assert NTD instructed the accountant to use the incorrect formula. Additionally, Counterclaim Plaintiffs argue Rental Achievement was not met because there was not 100% occupancy of the Tax Credit Apartment Units. These arguments are plausible and may prove to be correct at trial. Therefore, Plaintiffs have established some likelihood of success on the merits of at least one claim in this matter.

        4.        Public Interest

The final factor to consider in whether to grant a preliminary injunction is if the public interest would be served by the injunction. Counterclaim Plaintiffs argue the public interest would be harmed because a foreclosure would result in a loss of low-income housing in an area that desperately needs such housing. Counterclaim Defendants contend it has committed to continue to provide such housing as the market requires; thus, Counterclaim Plaintiffs argument is not an actual public interest concern. Provision of low-income housing is a public interest concern, especially in areas that have little affordable housing. There is no guarantee Counterclaim Defendants will continue to operate the housing complex as low-income. Therefore, the public interest is in favor of maintaining the status quo and preventing foreclosure of the property.

The balance of factors in this matter weighs in favor of granting the preliminary injunction. Counterclaim Plaintiffs have shown irreparable harm and a likelihood of success on the merits. Additionally, the irreparable harm to Counterclaim Plaintiffs outweighs any potential

harm to Counterclaim Defendants. For these reasons, the Court will grant the preliminary injunction.

C. *Bond*

Federal Rule of Civil Procedure 65(c) states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of bond required lies within the discretion of the trial court. *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Counterclaim Plaintiffs shall post bond in the amount of $100,000.00.

Accordingly,

**IT IS HEREBY ORDERED** that Counterclaim Defendants' Motion for Summary Judgment [105] is **GRANTED, in part,** and **DENIED, in part**. Counterclaim III shall be dismissed against NTD I, LLC and WC Orange, LLC. Counterclaim IV shall be dismissed in its entirety.

**IT IS FURTHER ORDERED** that Counterclaim Plaintiffs' Motion for Preliminary Injunction [116] is **GRANTED**.

Dated this 20th Day of July, 2018.

*E. Richard Webber* (signature)

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE